A01A0433. THE BEST JEWELRY MANUFACTURING COMPANY, INC. v. ARC SECURITY, INC. et al.
(548 SE2d 134)

MILLER, Judge.

Plaintiff-appellant The Best Jewelry Manufacturing Company, Inc. (BJM) sued defendant-appellees ARC Security, Inc., Atlanta Airlines Terminal Corporation (AATC), and Continental Airlines, Inc., alleging breach of a bailment contract and negligence arising out of the theft of approximately $2 million worth of jewelry and watches from an airport security checkpoint. Summary judgment was granted to all defendants based on the terms and conditions of Continental's approved tariff, which imposed a two-year limitation period in which to bring claims for loss or damage to baggage. We conclude the time limit for making a claim contained in this tariff applies to the theft of

passenger carry-on property while that property is under the dominion of Continental's agents during the pre-board screening and so affirm.

Viewed in the light most favorable to BJM as the opponent of summary judgment, the evidence authorizes the following facts: The owners of BJM, Harry Agasarkisian and his brother, are in the wholesale jewelry business. Agasarkisian flies 12 to 15 times a year to various trade shows. On this occasion, he was flying from Atlanta to Newark on a Continental flight to attend an international trade show in New York. He intended to check one bag of clothing and carry on a smaller case filled with diamond jewelry and watches he hoped to sell at the show.

At the security checkpoint operated by defendant ARC under contract to defendant AATC, Agasarkisian approached a security officer, proffered his business card, and requested a private check-in. He was instructed nevertheless to place his bags on the conveyor belt to the x-ray machine, if he wanted to get into the airplane. Agasarkisian placed both bags on the conveyor, waited until his merchandise passed into the x-ray machine, and then went through the metal detector without incident. As Agasarkisian waited for his bags at the end of the conveyor, the security officer put the belt in reverse. Agasarkisian's first bag came through but the second, containing his merchandise, did not. The security officer was scanning the second bag for items she could not identify when "the next thing she knew [was] that (2) persons were running towards the north terminal." A business traveler reported to police that two males approached scanner no. 5 and that "one of the males grabbed the bag from inside the scanner and [fled] toward the North Terminal."

1. *Continental.* Federal law directs the Federal Aviation Administration to prescribe regulations "requiring screening of all passengers and property that will be carried in [an aircraft] cabin . . . in air transportation. . . ."[1] Such screening must take place "before boarding . . . by a weapon-detecting facility . . . operated by an employee or agent of an air carrier. . . ."[2] The applicable regulations require the airline's security program to "prevent or deter the carriage aboard airplanes of any explosive, incendiary, or a deadly or dangerous weapon. . . ."[3] The regulations further require that the airline "shall refuse to transport . . . [a]ny person who does not consent . . ." to a search of his person and an inspection of his property.[4] So for purposes of this appeal, we assume without deciding that a bail-

---

[1] 49 USCS § 44901 (a).
[2] Id.
[3] 14 CFR § 108.9 (a).
[4] 14 CFR § 108.9 (b) (1), (2).

ment was created at the security checkpoint where all luggage, whether intended for check-in or carry-on, must be temporarily relinquished for physical inspection for weapons, explosives, or incendiaries.

Federal law also

> authorizes airlines to incorporate by reference in any ticket or other written instrument any of the terms of the contract of carriage to the extent authorized by the [U. S. Department of Transportation]. And the DOT's regulations contemplate that, [after Congressional deregulation of the airline industry], ticket contracts ordinarily would be enforceable under the contract law of the States. Correspondingly, the DOT requires carriers to give passengers written notice of the time period within which they may bring an action against the carrier for its acts.[5]

Agasarkisian's ticket/baggage check recites that it is "SUBJECT TO CONDITIONS OF CONTRACT ON REVERSE SIDE." The "CONDITIONS OF CONTRACT" include accompanying "notices [which] form part . . ." of the contract. The "NOTICE OF INCORPORATED TERMS" expressly "forms part of the conditions of contract between the airline and the passenger," and specifies that incorporated terms may include limits on liability for injury or death, limits on liability for baggage, and "[c]laims restrictions, including time periods in which passengers must file a claim or bring an action against the air carrier." The notice further informs the ticket holder that the full text of each carrier's terms may be inspected at airport and city ticket offices or obtained free of charge from each carrier.

The ticket is expressly "SOLD SUBJECT TO TARIFF REGULATIONS." Continental's Domestic General Rules Tariff No. DGR-1, also known as the Contract of Carriage, is approved by the U. S. DOT. Rule 95CO (A) (1) contains the following time limitation for claims against the carrier:

> No action shall be maintained for any loss of, or damage to, . . . any property or baggage, . . . arising out of or in connection with transportation of, or failure to transport, any passenger or property or baggage unless notice of the claim is presented in writing to an office of the carrier . . . alleged to be responsible, within 45 days after . . . the events giving rise to the claim, and a notarized claim form is

---

[5] (Citations and punctuation omitted.) *American Airlines v. Wolens*, 513 U. S. 219, 230 (II) (B) (115 SC 817, 130 LE2d 715) (1995).

returned within 45 days after receipt, and unless the action is commenced within 2 yr. after [such] occurrence, but failure to give [such notice of claim] shall not be a bar if the claimant shows good cause. . . .

The instant contract action was filed on February 17, 1998, while the loss occurred three years earlier on February 8, 1995.

In Georgia, properly noticed limitations of liability and other restrictions contained in an approved tariff will be enforced as part of the contract of carriage between an airline and a passenger.[6] Continental's notice of incorporated terms closely tracks the language of the applicable federal regulation.[7] As it is undisputed that BJM failed to bring the instant action within the two-year limitation imposed by the U. S. DOT-approved tariff, the trial court correctly granted summary judgment to Continental.

2. *Agents or employees.* In the Conditions of the Contract, Continental provided that "[a]ny exclusion or limitation of liability of carrier shall apply to and be for the benefit of agents, servants and representatives of carrier. . . ." In our view, both AATC and ARC are representatives or servants of the carrier to the extent they are involved in conducting the carrier's federally mandated pre-board security screening, which must be performed by the carrier's employees or agents. Consequently, both AATC and ARC are entitled to the protections and benefits of the limitations of liability, including the time limits and procedures for commencing the action, incorporated into the contract of carriage.[8] As BJM did not comply within the proper time limits, the trial court correctly granted summary judgment to the air carrier's representatives.

3. Remaining contentions have been considered. The first enumeration is without merit. The fourth enumeration is moot.

*Judgment affirmed. Andrews, P. J., concurs. Eldridge, J., concurs in judgment only.*

DECIDED APRIL 30, 2001 —
RECONSIDERATION DENIED MAY 24, 2001 — ▮▮▮▮▮▮▮

*Evert & Weathersby, Michael N. Weathersby, Roger C. Wilson,* for appellant.

*Lokey & Smith, Malcolm Smith, Mozley, Finlayson & Loggins,*

---

[6] *Delta Air Lines v. Isaacs,* 141 Ga. App. 209, 210-211 (2) (233 SE2d 212) (1977).

[7] See 14 CFR § 253.5 (b) (1), (2).

[8] See, e.g., *Huang v. Intl. Total Svcs.,* 1997 U. S. Dist. LEXIS 6053 (III) (B), Case No. 94-75368 (E.D. Mich. 1997), aff'd in an unpublished opinion, 172 F3d 48 (1999 U. S. App. LEXIS 433, Case No. 97-1608) (6th Cir. 1999).

*Sewell K. Loggins, Jennifer E. Theobold, Smith, Gambrell & Russell, David M. Brown, Jason S. Bell*, for appellees.